UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WESTERN WATERPROOFING COMPANY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:09CV1520 TIA ) |
| ELASTOMERIC ROOFING SYSTEMS, INC., | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Facts**

"[V]iewing the evidence in the light most favorable to the nonmoving party and giving that party the benefit of all inferences that may reasonably be drawn",[1] the Court sets forth the following facts:

In 2008, Western Waterproofing Company, Inc. ("Western Waterproofing") purchased HER 202 FG seam sealant from Elastomeric Roofing Systems, Inc. ("ERSystems"). The purpose of the sealant was to seal roofing seams on two buildings located in Memphis, Tennessee. (Defendant's Statement of Uncontroverted Material Facts ["SMF"], ¶ 6) HER 202 FG is a moisture-cure polyurethane sealant, and the uses included waterproofing metal roof seams and fasteners and flashing around roof penetrations where roof movement causes cracking and moisture penetration. (SMF, ¶ 7) The physical properties of this product include an "Ultimate Elongation" of 500%. (SMF, ¶ 8)

---

[1] Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 867-68 (8th Cir. 2008).

Western Waterproofing was familiar with the proper application of HER 202 FG prior to using it on the roofs in question. (SMF, ¶ 13) The roofs were constructed of hundreds of metal panels affixed together with screws. (SMF, ¶ 15) Western Waterproofing applied the HER 202 FG to the horizontal seam on the roofs with the expectation that it would provide a watertight seal to a seam believed to be mechanically fixed and tight, though not watertight. (SMF, ¶ 16) The roofs were leaking before Western Waterproofing applied the HER 202 FG sealant. (SMF, ¶ 46)

HER 202 FG is a polyurethane coating applied by pumping into place then brushing on to a wet thickness of 1/16 inches. (SMF, ¶¶ 17-18) Application to gaps greater than 1/16 inches would not allow the product to effectively seal the seam. (SMF, ¶ 19; Def. Exh. D, Verified Rule 26(a)(2)(B) Report of Timothy Leonard, pp. 2-3) Some of the gaps between the overlapping panels were 3/16 inches, although Western Waterproofing's Corporate Designee could not be certain that the gaps were 3/16 inches when the sealant was applied. (SMF, ¶ 20, Depo. James Moenning, p. 95, lines 8-25, p. 96, lines 1-10)

Temperature changes affect the expansion and contraction of metal roof panels in that their temperature increases greatly with the sun. (SMF, ¶¶ 21-22) Although a roof coating can minimize the temperature changes in the panels, the roofs at issue were uncoated. (SMF, ¶ 23) The expansion and contraction of the panel seams is based in part on the size of the panels[2], and with temperature changes in Memphis, the seam expansion and contraction was over half an inch. (SMF, ¶¶ 25-28) Using the HER 202 FG on uncoated roofs of 40 feet by 24 inch metal panels without additional seam fasteners was contrary to the custom and practice in the roofing industry and exceeded the

---

[2] The panels in question were 40 feet by 24 inches and were made of steel. (SMF, ¶¶ 25-26)

2

represented capacity of HER 202. (SMF, ¶¶ 29-30) In the roofing industry, custom and practice require the application of metal fasteners on larger panels, and failure to follow this practice is a deviation from roofing industry standards. (SMF, ¶ 31) Western Waterproofing did not install additional fasteners to close existing gaps in the panels prior to the problems with the sealant. (SMF, ¶ 38) However, it did purchase fasteners in March, 2009, despite being told by EMSystems that fasteners would not be needed. (Def. Exh. H, p. 3; Def. Exh. G; Pl. Exh. 3) The roof also had some screws backing out of the metal panels, and HER 202 FG was not designed to hold screws in place. (SMF, ¶¶ 33-34) These "backed out" screws tore through the applied HER 202 FG, broke the seal, and allowed water to penetrate the roof. (SMF, ¶ 35)

Western Waterproofing relied on the Product Data Specification sheet, which instructed how to apply HER 202 FG over metal. (SMF, ¶ 32) This sheet referenced the Metal Roof Restoration Specification sheet for additional instructions for applying HER 202 FG over metal roofs, which stated that, before applying HER 202 FG, all loose fasteners should be tightened, missing fasteners should be replaced, and metal panels with seam gaps of 1/8 inches or more must be stitched as tight as possible with additional screws. (SMF, ¶¶ 40-41) Western Waterproofing was aware that applying the product to gaps between panels that were greater than 1/8 inches was outside the product specification and that a gap of 3/16 inches exceeded the recommended size for gaps on which to use HER 202 FG without additional screws. (SMF, ¶¶ 44-45)

The Product Data Specifications sheet contained a warranty for the HER 202 FG seam sealant. (SMF, ¶ 51) The warranty states, "the product will meet the sales specification at the time of shipment. Your exclusive remedy for breach of such warranty is limited to refund of the purchase price or replacement of any product shown to be other than warranted." (Def. Exh. C) Western

Waterproofing paid $27,776.88 for the sealant. (SMF, ¶ 52; Def. Exh. H)

On September 21, 2009, Western Waterproofing filed a Complaint in federal court, alleging that "[t]he failure of the products on the roofs to which Western applied the products in the manner directed by ERSystems is a breach of ERSystems' implied warranty. That breach has caused damages to Western in that Western will be required to repair the roofs at its own cost . . . ."[3] (Complaint, ¶ 8) ERSystems filed a Motion for Summary Judgment on June 30, 2010, arguing that Plaintiff had not met its burden of establishing a prima facie case of breach of implied warranty and that Plaintiff's misuse of the product caused the sealant to fail. In addition, ERSystems stated that even if a breach of implied warranty occurred, the sole remedy is contained in the limited warranty, which is the refund of the purchase price or replacement of the product.

Western Waterproofing filed a response on September 17, 2010 and attached affidavits from two company employees and several photographs. Subsequently, ERSystems filed a Motion to Strike the affidavits, which this Court granted on November 3, 2010, for failure to designate the affiants as either fact or expert witnesses. (Doc. #46, Memorandum and Order of 11/3/10)

## **Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary

---

[3] Western Waterproofing claims in its Memorandum in Opposition to Defendant's Motion for Summary Judgment that this is a *res ipsa loquitur* law suit. However, the undersigned notes that Plaintiff's Complaint does not allege a *res ipsa loquitur* claim. "Absent pleading *res ipsa loquitor* liability, Plaintiffs must provide evidence to support a claim of product defect . . . ." Dunn v. Nexgrill Indus., Inc., No. 4:07-CV-01875 JCH, 2009 WL 1774327, at *2 (E.D. Mo. June 23, 2009) (citation omitted); see also Norman v. United States, No. 1:04-CV-111, 2006 WL 335510, at *5 (E.D. Mo. Feb. 13, 2006) (concluding that plaintiff could not rely on *res ipsa loquitur* because plaintiff plead specific negligence, which was inconsistent with and precluded reliance on *res ipsa loquitur* to establish a presumption of negligence). Here, Plaintiff specifically claims breach of implied warranty as the cause of its damages in its Complaint, and a *res ipsa loquitur* claim is unavailable.

judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

## **Discussion**

In its motion for summary judgment, Defendant ERSystems argues that Plaintiff has not

5

established that a deviation of the HER 202 FG from the published typical physical properties breached an implied warranty or caused the roofs to leak. Plaintiff Western Waterproofing responds that there is no explanation for the damages suffered by Western Waterproofing other than the failures of the product to work. The undersigned finds that summary judgment is warranted in this case.

To recover under a breach of implied warranty[4] theory, "a plaintiff must prove that the buyer was injured by the defective nature of the goods." Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 130 (Mo.2010); see also Pro Serv. Auto., LLC v. Lenan Corp., 469 F.3d 1210, 1214 (8th Cir. 2006) (under Missouri law, a plaintiff in an implied warranty claim must demonstrate, among other things, that the alleged defect caused the damages).

Plaintiff is unable to meet its burden of showing that a defect in the HER 202 FG sealant caused the sealant to crack and the roofs to leak. As stated in the legal standards above, once the moving party demonstrates, and record does in fact bear out, that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Here, EMSystems has shown through its expert's affidavit[5] that Western Waterproofing did

---

[4] Mo. Approved Jury Instr. (Civil) 25.08 (6th ed.) sets forth the elements of a Breach of Implied Warranty of Merchantability Under Uniform Commercial Code as (1) the defendant sold and plaintiff purchased the product; (2) the product was not fit for one of its ordinary purposes when sold by defendant; (3) the plaintiff used the product for such a purpose; (4) the plaintiff gave defendant notice within a reasonable time after plaintiff knew or should have known the product was not fit for such purpose; and (5) the plaintiff was damaged as a direct result of such product being unfit for such purpose.

[5] Although Western Waterproofing contends that expert witness Timothy Leonard's report is not supported by admissible facts and is not based on observation, Plaintiff has not properly objected to this report. Rule 702 of the Federal Rules of Evidence gives an expert "wide

not properly apply the sealant according to the manufacturer's specification and industry standards. The gaps in the overlapping panels exceeded 1/16 of an inch, which would not allow the product to effectively seal the seam. Further, while roof coating could minimize temperature changes in the panels, the roofs were uncoated, allowing over a half inch seam expansion and contraction due to temperature changes. In addition, "backed out" screws tore the sealant, allowing water to penetrate the roofs. While the record indicates that Western Waterproofing did purchase fasteners, it did not install them prior to the initial application of the sealant.

Western Waterproofing has failed to present any contrary evidence. Plaintiff has not designated any fact or expert witnesses to show that the cracking the sealant and subsequent leaks in the roofs were caused by a defect in the HER 202 FG sealant. That the roofs continued to leak after application of the sealant does not establish proof that the product was defective and unfit for its ordinary purpose. Western Waterproofing's "failure to provide expert testimony, or other evidence of defect, prevents [it] from proceeding" with its breach of warranty claim. Bryant v. Laiko Int'l Co., Inc., No. 1:05CV00161 ERW, 2006 WL 2788520, at *10 (E.D. Mo. Sept. 26, 2006). Therefore, because Plaintiff is unable to demonstrate a genuine issue of material fact with regard to its breach of implied warranty claim, Defendant ERSystems is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Elastomeric Roofing Systems, Inc.'s Motion

---

latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Western Waterproofing has not challenged Mr. Leonard's qualifications or reliability of his opinion under Daubert, nor can Plaintiff counter the testimony with its own expert, as Plaintiff failed to make proper designations under Rule 26, resulting in this Court striking the submitted affidavits. See Presley v. Lakewood Eng'g and Mfg. Co., 553 F.3d 638, 643 (8th Cir. 2009) (noting the factors courts consider to determine the reliability of an expert's opinion on a motion to exclude).

for Summary Judgment [Doc. # 23] is **GRANTED**. A separate Judgment shall accompany this Memorandum and Order.

Dated this 21st day of December, 2010.

                                                  /s/ Terry I. Adelman

                                           UNITED STATES MAGISTRATE JUDGE